Ernest N. Reddick (State Bar No. 048522)
ereddick@nixonpeabody.com
Rosalyn P. Mitchell (State Bar No. 173829)
rmitchell@nixonpeabody.com
David A. Kolek (State Bar No. 245330)
dkolek@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Telephone:  (415) 984-8200
Facsimile:  (415) 984-8300

Attorneys for Plaintiff
HANSON AGGREGATES MID-PACIFIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSON AGGREGATES MID-PACIFIC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PIONEER vessel, <u>IN REM</u>, its engines, tackle, equipment, furnishings and machinery, <u>IN PERSONAM</u> MARBULK CANADA INC., MARBULK SHIPPING, INC., CSL INTERNATIONAL INC., <br><br> Defendants. | Case No. C07 3849-JL <br><br> **HANSON AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date: October 17, 2007 <br> Time: 9:30 a.m. <br> Place: Courtroom F |

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................. 1

II. FACTS ............................................................................................................................. 2

    A.  The Parties........................................................................................................... 2

    B.  Hanson's Sand..................................................................................................... 2

    C.  CSL's Acknowledgement of Liability for Cargo Damage ................................. 3

    D.  Hanson's Mitigation Efforts................................................................................ 3

    E.  Contract of Affreightment Provisions................................................................. 3

    F.  Hanson's Attempts To Resolve the Claim With CSL.......................................... 4

III. LEGAL ARGUMENT ..................................................................................................... 5

    A.  Motions to Dismiss for Failure to State a Claim under Fed. R. Civ.
Proc. § 12(b)(6) are Rarely Granted.................................................................... 5

    B.  CSL is Not Protected by the One Year Time for Suit Provision of the
HagueVisby Rules............................................................................................... 6

    C.  CSL Also Cannot Claim Time-Bar Immunity Under the Canada Marine
Liability Act. ....................................................................................................... 8

    D.  Even if Hague Visby Applied to CSL, The Defendants by their
Conduct Have Waived the Otherwise Applicable Time-Bar Limitation. .......... 9

IV. CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Albion Laboratories, Inc. v. Seroyal Brands, Inc.,*
  1979 U.S. Dist. LEXIS 7892 (N.D. Cal. 1979) (Lexis) .......................................................... 5

*Associated Metals & Minerals Corp. v. S/S Jasmine,*
  983 F.2d 410 (2nd Cir. 1993) ............................................................................................. 6, 8

*Austin, Nichols & Co. v. Cunard S.S. Ltd.,*
  367 F.Supp 947 (S.D.N.Y. 1973) ........................................................................................ 11

*Cahill v. Liberty Mut. Ins. Co.,*
  (9th Cir. 1996) 80 F.3d 336 ................................................................................................... 5

*Cauchi v. Brown,*
  51 F.Supp.2d 1014, 1016 (E.D. Cal. 1999) .......................................................................... 5

*In re Equity Funding Corp. of Am. Sec. Litig.,*
  416 F. Supp. 161 (C.D. Cal. 1976) ....................................................................................... 6

*Linmark Indus., Inc. v. M/V "Ruhr Express",*
  1990 WL 102234 (S.D.N.Y. 1990) (Westlaw) ...................................................................... 9

*Pena v. Valo,*
  563 F. Supp. 742 (C.D. Cal. 1983) ....................................................................................... 6

*United States v. Redwood City,*
  640 F.2d 963 (9th Cir. 1981) ................................................................................................. 5

**Statutes**

Fed. R. Civ. Proc. Rule 12(b)(6) ................................................................................... 1, 5, 6

**Other Authorities**

Hague Visby Rules ............................................................................................. 3, 4, 6, 7, 8, 9

Plaintiff HANSON AGGREGATES MID-PACIFIC, INC. ("Plaintiff" or "Hanson"), submits the following memorandum of points and authorities in opposition to MARBULK CANADA INC., MARBULK SHIPPING, INC., referred to herein collectively as ("Marbulk") and CSL INTERNATIONAL INC.'s ("CSL") (collectively "Defendants") Rule 12(b)(6) motion to dismiss as follows:

## I. INTRODUCTION

Defendants' reliance on a statute of limitation defense is contrary to law and is belied by the facts. If the statute of limitations defense applies at all, which Hanson disputes, defendants have waived it by their conduct. Moreover, assuming, *arguendo*, that the court concludes that the one year limitation period applies, the plain language of the Contract of Affreightment dated August 3, 2001 limits the application of the limitations period to the owner of the performing vessel, to wit, Marbulk Canada, Inc. The one year statute of limitations period does not apply to CSL because CSL was not the owner of the performing vessel.

It is undisputed that Plaintiff's sand was contaminated while in the custody and control of the Defendants. Soon after the costly contamination was discovered, Defendant CSL acknowledged its liability for the damaged cargo. After CSL's admission of fault, the only remaining issue between the parties involved the amount to be paid to Hanson for the damaged cargo. CSL made representations during and after the year following the cargo damage that it would pay Hanson's claim once Hanson provided details as to how it mitigated its damages. Hanson provided the requested information on several occasions. CSL ultimately reneged on its assurances to pay after more than a year had passed. CSL then had the audacity to tell Hanson that its claim was barred because Hanson did not file a lawsuit in the first year in the midst of these settlement discussions.

By their conduct and statements, Defendants induced Hanson to reasonably rely on representations that they would pay the claim. In so doing, Defendants affirmatively waived any time-bar immunity. At a minimum, under the facts of this case, Hanson deserves the opportunity to conduct discovery on the issue of Defendants' waiver. To be denied such opportunity would be prejudicial and unjust. As will be demonstrated more fully below, Defendants' motion to dismiss should be denied.

II. **FACTS**

A. **The Parties**

Plaintiff Hanson is one of the world's largest suppliers of heavy building materials to the construction industry. Defendant CSL specializes in the transportation and handling of dry-bulk cargo. Defendant Marbulk is a carrier of merchandise by water for hire. Defendant vessel, PIONEER (04-22) (hereinafter "the Vessel") is a cargo vessel. The Vessel is, and at all relevant times was, owned by Marbulk.

Hanson and CSL entered into a written Contract of Affreightment ("COA") dated August 3, 2001. A true and correct copy of the COA is attached to Plaintiff's Complaint as Exhibit A. Defendant CSL agreed to carry various cargoes for Plaintiff. In turn, CSL had an agreement with Marbulk in which vessels owned by Marbulk could be used to carry Plaintiff's cargoes under the COA.

B. **Hanson's Sand**

On or about July 23, 2004, the Vessel arrived in Sechelt, British Columbia, Canada to be loaded with Plaintiff's sand and transported to the San Francisco Bay Area. On or about July 28, 2004, the Vessel arrived at Anchorage 9 San Francisco Bay to discharge a portion of cargo to a lightering barge. See Declaration of Bill Butler ("Butler"), ¶ 11, Ex. H.

When the sand was discharged, foam rubber that had been used to seal the discharge gates from the cargo hold contaminated the sand. See Declaration of Butler, ¶ 6, Ex. C, ¶ 11, Ex. H. The next day, the remainder of the cargo was delivered by the Vessel to Plaintiff's customer, RMC Pacific Materials, Inc./Harbor Sand and Gravel Inc. ("RMC Harbor") in Redwood City, California. When the Vessel arrived at RMC Harbor's dock and the sand was discharged from the containers, the foam rubber used to seal the discharge gates again was discharged into the sand, further contaminating it. See Declaration of Butler, ¶ 6, Ex. C; ¶ 11, Ex. H.

On July 30, 2004, Plaintiff first became aware that the foam rubber material had contaminated the sand and was informed by RMC Harbor that it would not accept the sand due to this contamination. See Declaration of Butler, ¶ 4, Ex. A. Shortly thereafter, Plaintiff arranged to re-screen the contaminated sand in an effort to remove the foam rubber material. Plaintiff immediately

communicated to CSL the problems with the contaminated sand. See Declaration of Butler, ¶ 5, Ex. B. In early August 2004, CSL's claim adjuster, Cullin Maritime, inspected and took note of the contamination. See Declaration of Butler, ¶ 5, Ex. B. The total volume of contaminated sand discharged at RMC Harbor was approximately 31,108.5 metric tons, or 34,290.67 short tons. See Declaration of Butler, ¶ 9, Ex. F; ¶ 11, Ex. H.

### C.    CSL's Acknowledgement of Liability for Cargo Damage

Within days of discovering the damaged cargo, the parties had commenced an active correspondence regarding the cargo damage as detailed above. On August 4, 2004, David King of CSL essentially admitted liability for the damaged cargo, noting that the Vessel was being taken out of service "in order to fix the gates that required the foam packing." See Declaration of Butler, ¶ 3, ¶ 7, Ex. D. The parties exchanged correspondence over the next year and beyond regarding the amount of payment due Hanson.

### D.    Hanson's Mitigation Efforts

Meanwhile, Hanson promptly and appropriately mitigated damages. The original sales price for the sand was $14.75 per short ton. After the contaminated sand was re-screened at Hanson's expense, Plaintiff sold 34,290.67 short tons of re-screened contaminated sand at a significant loss to RMC Harbor for $5.00 per short ton. See Declaration of Butler, ¶ 11, Ex. H.

### E.    Contract of Affreightment Provisions

The following provisions contained in the COA are pertinent to this dispute.

Clause 1.1(e) provides:

"Owner" means "CSL *or* the owners of any vessel utilized in the performance of the Contract." [Emphasis added.]

Clause 21 of the COA provides, in pertinent part, as follows:

> .... it is expressly agreed that the Owner of the Vessels performing hereunder shall have the benefits of the "Rights and Immunities" in favor of the carrier or the Owner of said Vessels and shall assume the "Responsibilities and Liabilities" as defined in the International Convention for the Unification of Certain Rules Relating to Bills of Lading signed at Brussels on the 25th August, 1924 (the "Hague Rules") as amended, if that be the case, by the Protocol signed at Brussels on the 23rd February, 1968 (the "Hague-Visby Rules"). Nothing contained herein shall be deemed to be a surrender by the Owner of any Vessel performing hereunder of any of their rights or immunities or an

increase of any of the responsibilities or liabilities under the Hague Rules or the Hague-Visby Rules.

∗∗∗

Nothing in this Contract shall be construed as in any way restricting, excluding or waiving the right of any relevant party or person to limit his liability under any available legislation or law contained in the enactment in the Country of shipment giving effect to the Rules contained in the Hague Rules.

### F. Hanson's Attempts To Resolve the Claim With CSL

On August 20, 2004, David King ("King") of CSL sent an email to Bill Butler ("Butler") of Hanson setting forth the calculations of the costs associated with the damage done to the cargo and a proposed solution related to CSL's liability for the damage. See Declaration of Butler, ¶ 8, Ex. E. In response, on August 24, 2004, Butler sent a detailed estimate of the costs associated with the damaged cargo. See Declaration of Butler, ¶ 9, Ex. F. Despite this detailed report, on September 24, 2004, King requested further information related to the claim and Hanson's efforts to mitigate the damage. See Declaration of Butler, ¶ 10, Ex. G. Butler promptly responded with a detailed report and awaited a response from CSL. See Declaration of Butler, ¶ 10, Ex. G.

James Wallmann ("Wallmann"), counsel for Hanson, detailed the claim, including the losses suffered by Hanson, once again for CSL in a letter dated July 22, 2005. See Declaration of Butler, ¶ 11, Ex. H. This correspondence included much of the same information that had been communicated to CSL on a number of earlier occasions, including Hanson's extensive effort to mitigate the damage done by CSL, the costs of re-screening, and the invoices showing the originally contracted sales prices and the subsequently lowered price due to the contamination. See Declaration of Butler, ¶ 11, Ex. H. On July 22, 2005, David King acknowledged receipt of this correspondence. See Declaration of Butler, ¶ 12, Ex. I.

Thereafter, Mike Bedford ("Bedford") of CSL responded on August 1, 2005 by letter to Wallmann. See Declaration of Butler, ¶ 13, Ex. J. The letter suggested again that Hanson was obligated to mitigate its losses and, more incredibly, that CSL and Marbulk had never been provided evidence that Hanson had, in fact, mitigated the damage—despite the constant documentation by Hanson in the foregoing correspondence regarding its extensive mitigation efforts. See Declaration

of Butler, ¶ 13, Ex. J. After nearly a year of clear, direct communication regarding Hanson's claim, and, for that matter, CSL's clear, direct acknowledgement of fault and talk of proposed solutions, Bedford's letter requested, yet again, that Hanson provide documentation relating to its claim. See Declaration of Butler, ¶ 13, Ex. J. As recently as November 20, 2006 CSL requested Hanson's "continued patience" while CSL worked to resolve the matter. See Declaration of Butler, ¶ 14, Ex. K.

## III. LEGAL ARGUMENT

### A. Motions to Dismiss for Failure to State a Claim under Fed. R. Civ. Proc. § 12(b)(6) are Rarely Granted.

The standard of review for a motion to dismiss pursuant to Rule 12(b)(6) is well settled. A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); See also, *Cauchi v. Brown*, 51 F.Supp.2d 1014, 1016 (E.D. CA 1999). Granting a Rule 12(b)(6) motion to dismiss is only proper in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In resolving a § 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove *any* set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir. 1996). Specifically, a complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief plaintiff has demanded and the theory on which plaintiff seems to rely may not be appropriate.

A motion to dismiss is not the appropriate stage in litigation to measure the strength or weakness of facts alleged in a claim. Instead, the question is simply whether the party has plead facts that confer a cognizable right of action. The validity and ultimate weight of those facts are reviewed only after proper discovery has taken place. *Albion Laboratories, Inc. v. Seroyal Brands, Inc.*, 1979 U.S. Dist. LEXIS 7892 (N.D. Cal. 1979) (Lexis) (denying motion to dismiss where "factual picture" was murky and discovery was necessary); See also, *In re Equity Funding Corp. of Am. Sec. Litig.*,

416 F. Supp. 161 (C.D. Cal. 1976) (terming "premature" a motion to dismiss where plaintiff had not had opportunity to engage in discovery of information in possession of Defendants necessary to contest defendant's defenses); See also, *Pena v. Valo*, 563 F. Supp. 742 (C.D. Cal. 1983) (motion to dismiss continued when filed only three weeks after complaint and before plaintiff could produce facts to support jurisdiction).

This is simply not the type of "extraordinary" case meriting dismissal on this motion. In light of the liberal standard courts apply to parties seeking to defeat a motion to dismiss pursuant to Rule 12(b)(6), Hanson must only show that it has plead facts that meet the elements of its claim. Clearly, Hanson has met this liberal standard. After Plaintiff has a reasonable opportunity to conduct discovery, Defendants may seek to test the strength of the case in the more proper form of a summary judgment motion. However, at this early stage of the proceedings, Defendants' motion to dismiss should be denied.

**B.     CSL is Not Protected by the One Year Time for Suit Provision of the HagueVisby Rules.**

In order for the Hague Visby Rules (and their maritime counterparts such as the US Carriage of Goods by Sea Act and the Canada Marine Liability Act) to apply to contracts of private carriage (as in the present case), their provisions must be expressly incorporated by reference into the contract between the parties. *Associated Metals & Minerals Corp. v. S/S Jasmine*, 983 F.2d 410 (2nd Cir. 1993). Clause 21 of the COA incorporates certain parts of the Hague Visby Rules, including a time for suit provision with respect to cargo damage. This time is generally one year, but these Rules expressly provide the parties may extend this period. (Hague Visby Rules, III(6)).

Based on the plain reading of the contract, Clause 21 of the COA invokes the one-year time for suit of the Hague Visby Rules only in favor of **the Owner of the performing Vessels**. Although it is undisputed that CSL was not the owner of the performing vessel, Defendants have urged the Court to adopt a strained interpretation of Clauses 21 and 1.1 of the COA to conclude that the one-year limitations defense applies to CSL.

Defendants argue that the definition of "Owner" set forth in Clause 1.1 supports their position that CSL falls within the purview of owner of the performing vessel hereunder contemplated in Clause 21. In fact, Clause 1.1 supports the opposite result. It provides:

> "Owner" means "CSL **or** the owners of any vessel utilized in the performance of the Contract." [Emphasis added].

Clause 1.1 draws a clear distinction between CSL and the owners of the vessel. Based on Clause 1.1, Defendants argue that the word "Owner" must be taken to mean "CSL" everywhere it appears in the COA irrespective of the context and irrespective of the facts of the voyage. Defendants unnaturally force the word "Owner" beyond its ordinary meaning within the contract. For example, if "CSL" is substituted everywhere the word "Owner" appears in Clause 21, Clause 21 is reduced to gibberish.

Clause 21 of the COA provides, in pertinent part, as follows:

> .... it is expressly agreed that the Owner of the Vessels performing hereunder shall have the benefits of the "Rights and Immunities" in favor of the carrier or the Owner of said Vessels and shall assume the "Responsibilities and Liabilities" as defined in the International Convention for the Unification of Certain Rules Relating to Bills of Lading signed at Brussels on the 25th August, 1924 (the "Hague Rules") as amended, if that be the case, by the Protocol signed at Brussels on the 23rd February, 1968 (the "Hague-Visby Rules"). Nothing contained herein shall be deemed to be a surrender by the Owner of any Vessel performing hereunder of any of their rights or immunities or an increase of any of the responsibilities or liabilities under the Hague Rules or the Hague-Visby Rules.
>
> ***
>
> Nothing in this Contract shall be construed as in any way restricting, excluding or waiving the right of any relevant party or person to limit his liability under any available legislation or law contained in the enactment in the Country of shipment giving effect to the Rules contained in the Hague Rules.

In Clause 21, the word "Owner" does not appear alone. It is immediately followed by the qualifying words "of the Vessels performing hereunder." Those words must be given meaning, and they point directly away from CSL. With respect to the cargo damage in question, "Owner of the Vessels performing hereunder" refers only to Marbulk because it was the owner of the Vessel. In the context of this qualifying phrase, and in the context of a voyage that CSL concedes was performed by a **Marbulk-owned** vessel, Clause 21 does not cover CSL. The one-year limitations period contained

in Hague Visby (as incorporated by the COA) applies, if at all, only to Marbulk, not CSL. Therefore, the COA's reference to the Hague Visby Rules does not entitle defendant CSL to assert a Hague Visby time for suit defense in this action for the simple reason that CSL was not the owner of the vessel performing under the COA.

### C. CSL Also Cannot Claim Time-Bar Immunity Under the Canada Marine Liability Act.

Defendants fall back to the final sentence of Clause 21 and argue that the Canada Marine Liability Act ("CMLA"), which Defendants contend incorporates the Hague Visby Rules, supports its contention that CSL may avail itself of the one year statute of limitations defense. Clause 21 provides, in pertinent part, as follows:

> Nothing in this Contract shall be construed as in any way restricting, excluding or waiving the right of any relevant party or person to limit his liability under any available legislation or law contained in the enactment in the Country of shipment giving effect to the Rules contained in the Hague Rules.

Since the shipment originated in Canada, Defendants attempt to rely on this Canadian law. However this argument is unavailing. With respect to cargo damage, the CMLA is Hague Visby. CSL is not protected by the CMLA for the same reason it is not protected by Hague Visby.

Schedule 3, Article 1 of the CMLA makes clear that Hague Visby applies to **common carriage** covered by bills of lading which are documents of title when the bill of lading is regulating the relationship between the holder of the bill of lading and the carrier. The COA in this case, by contrast, was a contract of **private carriage**. There was no common carriage involved; nor were there negotiable bills of lading serving as documents of title. The COA expressly required use of a "Non-Negotiable Cargo Receipt" in lieu of bills of lading. (COA, Clause 25).

The language in Clause 21 that CSL cites to support its argument of protection under the CMLA states only that the COA shall not preclude a party from the protection of "available legislation or law." However, maritime liability limitation legislation or law is applicable to private carriage only to the extent <u>expressly</u> incorporated in the relevant contract. *Associated Metals & Minerals Corp. v. S/S Jasmine*, 983 F.2d 410, 413 (2nd Cir. 1993). Defendants concede this point at 6:8 of their Memorandum in support of their motion. In other words, both the CMLA and Hague

Visby may have been "available legislation," but CSL did not avail itself of them. Here the contract of private carriage (the COA) did not extend the CMLA or Hague Visby in favor of CSL with respect to a voyage in which CSL was not the owner of the performing vessel.

### D. Even if Hague Visby Applied to CSL, The Defendants by their Conduct Have Waived the Otherwise Applicable Time-Bar Limitation.

Even if the Court were to conclude that the Hague Visby Rules' one year limitation period applies to CSL, the particular facts of this case are that the Defendants, by their conduct, affirmatively waived the right to assert a statute of limitations defense. CSL on its behalf, and on behalf of Marbulk, repeatedly caused Hanson to forbear. Defendants encouraged Hanson to continue to engage with them regarding the details of the claim that had been essentially settled. Declaration of Butler, ¶ 3. Such conduct constitutes waiver. Defendants may not now attempt to claim the time for suit has expired.

Courts do not permit Defendants to benefit from their inequitable conduct. In *Linmark Indus., Inc. v. M/V "Ruhr Express"*, 1990 WL 102234 (S.D.N.Y. 1990) (Westlaw), the Court denied defendant shipper's motion to dismiss based on a statute of limitations defense. Taking all of the allegations in the complaint as true for the purposes of a motion to dismiss, as the present court must do on this motion, the *Linmark* Court took note of evidence that the defendant had continued to actively defend the claim, had openly discussed the merits of the claim with the other party, and kept a settlement offer open, all long after the purported expiration of the time limitation. Moreover, the court noted that: "The very fact of a settlement offer, regardless of the amount, may have the effect of lulling a plaintiff into a false sense of security about a time bar." *Id.* at *1. Therefore, dismissal of the complaint at such an early stage in the proceedings was inappropriate.

Dismissal is likewise inappropriate here, where the Defendants acted in a strikingly similar fashion as the Defendants in *Linmark,* thereby inducing Hanson to believe that its claim would be paid without the need for suit. Hanson reasonably relied on such assurances, and therefore dismissal based on a time bar claim is not warranted. As recently as November 20, 2006, Mike Bedford of CSL wrote to Hanson stating, "I would appreciate your continued patience while I look into this matter." See Declaration of Butler, ¶ 14, Ex. K. More striking, is Mr. Bedford's letter of August 1,

2005, sent to Hanson *after* the claim was allegedly time-barred, wherein he invited Hanson to "provide us with a complete explanation of this statement [of damage mitigation] with supporting documentation." See Declaration of Butler, ¶ 13, Ex. J. Affirmative waiver could not be any clearer than Defendants' unequivocal invitation to Hanson to resolve the matter, even after the alleged time bar had approached and passed.

At this matter's nascent stage, where dismissal is only proper when no set of facts could support plaintiff's claim, there is significant evidence to dispel defendant's sudden claim of a time limitations defense. Defendants by their conduct and written statements induced Hanson to continue to correspond and negotiate settlement and forego pursuing its legal rights and remedies. Hanson reasonably interpreted these statements and actions by CSL and by CSL on behalf of Marbulk as waiving any time-bar claim. The correspondence in this case shows that CSL conceded its liability for Hanson's loss early on, and that Hanson was led to believe the matter had been resolved in August 2004. See Declaration of Butler, ¶ 3.

On August, 4, 2004, just days after the damage came to light, King of CSL wrote to Hanson:

> We regret any inconvenience that has arisen from the recent call on the Pioneer to Redwood City. We hope that screening can overcome the immediate problem. As far as the longer term, *we are taking the vessel out of service for approximately two days in order to fix the gates that required the foam packing.* We are confident that we will not have similar issues in the future.
> See Declaration of Butler, ¶ 7, Ex. D. [Emphasis added].

In response to a request by CSL to provide estimates on the costs associated with the damage concededly caused by CSL, Hanson sent detailed reports estimating the costs of the damage *and* the efforts Hanson was undertaking to mitigate the losses as much as possible. CSL gave every indication that the matter would be resolved informally after these estimates had been provided. Declaration of Butler, ¶ 10, Ex. G. Hanson reasonably relied on CSL's assurances that the matter would be resolved and responded diligently whenever CSL requested further documentation, even when that information had already been provided to CSL on a number of prior occasions. See Declaration of Butler, ¶ 11, Ex. H. And, after more than a year of assurances by CSL that it would pay Hanson's claims, CSL reneged on its promises. CSL may not now benefit from a limitations defense.

1      Even at the more advanced stage of litigation on summary judgment, courts will not dismiss an action where there is a genuine dispute in the evidence as to whether waiver of the time bar defense took place. *See Austin, Nichols & Co. v. Cunard S.S. Ltd.*, 367 F.Supp 947 (S.D.N.Y. 1973) (Lexis), where the court denied summary judgment for the carrier based on a time bar defense where the Court found that the shipper had relied on assurances from Defendants' agents, both before and after the expiration of the time for suit had occurred, that claims would be paid and that suit was unnecessary.

## IV. CONCLUSION

This is not an "extraordinary" case that warrants dismissal. Rather, it is precisely the type of case that deserves to advance to the discovery phase so that both sides may test their theories based on all of the available evidence. Any challenge based on statute of limitations should be made at the summary judgment stage. Even if the Court were to conclude that the Hague-Visby Rules' one year limitation period would otherwise apply, the particular facts of this case demonstrate that Defendants by their conduct waived their right to rely on the defense. As the facts set forth above compellingly demonstrate, CSL led Hanson to believe that its claim had been all but settled and now CSL wrongfully attempts to claim the time for suit has expired. Such reprehensible and misleading conduct is not to be condoned. Defendant's Motion to Dismiss should be denied.

Dated: September 26, 2007

NIXON PEABODY LLP

By: _____
Ernest N. Reddick
Attorneys for Plaintiff
HANSON AGGREGATES MID-PACIFIC, INC.

## PROOF OF SERVICE

*Hanson Aggregates Mid-Pacific, Inc. v. Pioneer, et al.*
**United States District Court, Northern District**
Case No.   C 07 3849 JL

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is Nixon Peabody LLP, One Embarcadero Center, 18th Floor, San Francisco, CA 94111-3600.

On September 26, 2007, I served the following document(s):

**HANSON AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

on the parties stated below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

_X_: By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the U.S. Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, CA, for mailing to the office of the addressee following ordinary business practices.

___: By Personal Service — I caused each such envelope to be given to a courier messenger to personally deliver to the office of the addressee.

___: By Overnight Courier — I caused each such envelope to be given to an overnight mail service at San Francisco, CA, to be hand delivered to the office of the addressee on the next business day.

___: By Facsimile — From facsimile number 415-984-8300, I caused each such document to be transmitted by facsimile machine, to the parties and numbers listed below, pursuant to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration.

### Addressee(s)

| | |
|---|---|
| Richard C. Wootton, Esq.<br>Marc T. Cefalu, Esq.<br>Cox Wootton Griffin Hansen & Poulos LLP<br>190 The Embarcadero<br>San Francisco, CA  94105 | Attorneys for Defendants Marbulk Canada, Inc., Marbulk Shipping, Inc. and CSL International, Inc.<br><br>Telephone:   (415) 438-4600<br>Facsimile:     (415) 438-4601 |

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 26, 2007, at San Francisco, California.

_____
Cara M. Kim