Ernest N. Reddick (State Bar No. 048522)
ereddick@nixonpeabody.com
Rosalyn P. Mitchell (State Bar No. 173829)
rmitchell@nixonpeabody.com
David A. Kolek (State Bar No. 245330)
dkolek@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Telephone:   (415) 984-8200
Facsimile:   (415) 984-8300

Attorneys for Plaintiff
HANSON AGGREGATES MID-PACIFIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSON AGGREGATES<br>MID-PACIFIC, INC.,<br><br>                              Plaintiff,<br><br>       vs.<br><br>PIONEER vessel, <u>IN REM</u>, its engines, tackle,<br>equipment, furnishings and machinery, <u>IN<br>PERSONAM</u> MARBULK CANADA INC.,<br>MARBULK SHIPPING, INC., CSL<br>INTERNATIONAL INC.,<br><br>                              Defendants. | Case No.  C07 3849-JL<br><br>**DECLARATION OF BILL BUTLER IN<br>SUPPORT OF HANSON AGGREGATES<br>MID-PACIFIC, INC.'S OPPOSITION TO<br>MOTION TO DISMISS**<br><br>Date     October 17, 2007<br>Time:   9:30 a.m.<br>Place:   Courtroom F |

DECLARATION OF BILL BUTLER IN SUPPORT OF HANSON     -1-
AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO
MOTION TO DISMISS;  CASE NO.  C07 3849

10735042.1

I, Bill Butler, declare:

1.    I am VP Operations, Northern CA Aggregates at Hanson Aggregates Mid-Pacific, Inc. ("Hanson"). I have personal knowledge of the facts stated herein, and could competently testify thereto if called as a witness.

2.    I make this declaration in support of Hanson's Opposition to Motion to Dismiss.

3.    In my position with Hanson, I was involved in the on-going correspondence between Hanson and the defendants in this action, including Marbulk Canada, Inc., Marbulk Shipping, Inc., and CSL International, Inc, regarding the damage that occurred to Hanson's cargo aboard the vessel Pioneer, on or about July 28, 2004. Based on my direct and personal involvement in this matter, my understanding was that CSL had accepted liability for the damage to Hanson's cargo, and the claim had been essentially settled. All that remained was the matter of working out the details of the costs of mitigation.

4.    Attached hereto as **Exhibit A** is a true and correct copy of a letter sent by Syl LaMacchia to Rick Beatty, dated July 30, 2004.

5.    Attached hereto as **Exhibit B** is a true and correct copy of an e-mail message sent by Tom Jackson to Jeff Robbins, dated July 30, 2004.

6.    Attached hereto as **Exhibit C** is a true and correct copy of an e-mail message sent by Tom Jackson to Syl LaMacchia, dated July 30, 2004.

7.    Attached hereto as **Exhibit D** is a true and correct copy of an e-mail message sent by David King to Bill Butler dated August 4, 2004.

8.    Attached hereto as **Exhibit E** is a true and correct copy of an e-mail message sent by David King to Bill Butler, dated August 20, 2004.

9.    Attached hereto as **Exhibit F** is a true and correct copy of an e-mail message sent by Bill Butler to David King dated August 24, 2004.

10.    Attached hereto as **Exhibit G** is a true and correct copy of an e-mail message sent by Bill Butler to David King dated September 24, 2004.

DECLARATION OF BILL BUTLER IN SUPPORT OF HANSON    -2-
AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO
MOTION TO DISMISS; CASE NO. C07 3849

10735042.1

1       11.    Attached hereto as **Exhibit H** is a true and correct copy of a letter sent by Jim

2   Wallmann to David King and Mike Bedford dated July 22, 2005.

3       12.    Attached hereto as **Exhibit I** is a true and correct copy of an email sent by

4   David King to Kelly Mueller and James Wallmann dated July 22, 2005.

5       13.    Attached hereto as **Exhibit J** is a true and correct copy of a letter sent by Mike

6   Bedford to Jim Wallmann dated August 1, 2005.

7       14.    Attached hereto as **Exhibit K** is a true and correct copy of an email sent to

8   Mike Bedford from Jeffrey Brummert, dated November 20, 2006.

9       I declare under penalty of perjury under the laws of California that the foregoing is

10  true and correct.

11      Dated this __26__ day of __September__, 2007 at __Berkeley__, California.

12

13      _____
                      BILL BUTLER

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  DECLARATION OF BILL BUTLER IN SUPPORT OF HANSON    -3-
AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO
MOTION TO DISMISS; CASE NO. C07 3849

10735042.1

EXHIBIT A

ATTACHMENT A



775 Seaport Blvd.
Redwood City, CA 94063
(650) 369-9189
Fax (650) 369-6026

July 30, 2004

Mr. Rick Beatty, General Sales Manager
Hanson Aggregates Mid-Pacific, Inc.
3000 Busch Road
Post Office Box 580
Pleasanton, California 94566-0808

Dear Mr. Beatty:

As was discussed earlier today, Harbor Sand and Gravel, Inc. will not accept the
sand cargo discharged in Redwood City, California from Wednesday, July 28
through Thursday, July 29, 2004 due to contamination.

Please contact me to discuss any options that may be available.

Sincerely,

Syl LaMacchia
General Manager

C:    E. Woodhouse
      D. Tsuchida
      T. Jackson
      B. Butler

EXHIBIT B

## Wallmann, James (San Ramon) NA

| | |
|---|---|
| **From:** | Jackson, Tom (San Francisco) NA |
| **Sent:** | Friday, July 30, 2004 10:38 AM |
| **To:** | Jeff Robbins (E-mail); Jim Phillips (E-mail) |
| **Cc:** | Butler, Bill (Pleasanton) NA; Beatty, Rick (Pleasanton) NA; Tarantino, Steve (Pleasanton) NA; Lukkason, Wes (San Francisco) NA; Bishop, Mike (Oakland) NA |
| **Subject:** | Future voyages of the Pioneer for Hanson |

Before we schedule any future voyages of the Pioneer for Hanson we need to have an action plan to prevent any contamination of our material. The Pioneer 04-24 is on our schedule to arrive in Sechelt on August 14. If we can not guarantee that there will not be another problem. This voyage is in question. I will be on vacation from July 31 and return to work on August 9. I will keep in contact about the 04-24 voyage.

I talked to Gram Cullen this morning and he will meet me at Redwood City at 11:30, to look at the RMC material.

1

EXHIBIT C

## Wallmann, James (San Ramon) NA

| | |
|---|---|
| **From:** | Jackson, Tom (San Francisco) NA |
| **Sent:** | Friday, July 30, 2004 8:31 AM |
| **To:** | 'Harbor - Syl La Macchia' |
| **Cc:** | Beatty, Rick (Pleasanton) NA; Butler, Bill (Pleasanton) NA; Lukkason, Wes (San Francisco) NA; Tarantino, Steve (Pleasanton) NA; Jeff Robbins (E-mail); Jim Phillips (E-mail) |
| **Subject:** | RE: Pioneer shipment 7-28-04 |

     I called Jeff Robbins at CSL this morning informing him of this problem. Tom

```
-----Original Message-----
From: Harbor - Syl La Macchia
[mailto:SLaMacchia@harborsandandgravel.com]
Sent: Friday, July 30, 2004 8:09 AM
To: Rick beatty (E-mail); Jackson Tom (E-mail)
Cc: Harbor - Bruce Beattie; RMCPMI - Dennis Tsuchida; Harbor - Ivor Thomas
Subject: Pioneer shipment 7-28-04
```

Gentleman,
 It was brought to my attention late in the discharging of the pioneer yesterday that some type of foam material was found in the sand. My crew gathered a large garbage bag full. I'm guessing the ships crew may have used this material to seal gates or something like that. We all know how serious this can be. I will not load out of this stockpile until I can be sure that we where able to recover all of the contamination. Please advise

Syl

EXHIBIT D

## Wallmann, James (San Ramon) NA

| | |
|---|---|
| **From:** | David King [dking@CSLVAN.com] |
| **Sent:** | Wednesday, August 04, 2004 2:40 PM |
| **To:** | Butler, Bill (Pleasanton) NA; ':dave.hummel@hansonamerica.com' |
| **Subject:** | Thankyou |

Dear Bill and David,

I just returned from Boston and wanted to thank you for your hospitality in San Francisco and San Diego. I really enjoyed the meal and the ball game. It was the first bal game I had been to in many years.

During our visit to San Francisco, I mentioned the 25,000 DWT barge, Dana Dunn, was for sale on the US East Coast. I now understand it was sold last week for use in the San Francisco Bay area. I'm going to assume it was Hanson or Foss who were the purchaser. For your guidance I attach a report on the barge that we prepared after an extensive survey some time ago. It will give you our perspective of the condition.

As far as going forward, we read you loud and clear on the reliability issue and hopefully these issues are now behind us. We do understand the significance. Please let me know if there is anything we can do for you in the short term.

We regret any inconvenience that has arisen from the recent call on the Pioneer to Redwood City. We hope that screening can overcome the immediate problem. As far as the longer term, we are taking the vessel out of service for approximately two days in order to fix the gates that required the foam packing. We are confident that we will not have similar issues in the future.

Thanks again,

David King
Vice President
CSL International, West Coast
Office - 604-940-8020
Fax - 604-940-8049
Mobile - 604-828-8492

EXHIBIT E

## Wallmann, James (San Ramon) NA

| | |
|---|---|
| **From:** | David King [dking@CSLVAN.com] |
| **Sent:** | Friday, August 20, 2004 2:12 PM |
| **To:** | Butler, Bill (Pleasanton) NA |
| **Cc:** | Mike Bedford (mbedford@cslmtl.com); Ops for CSLVAN |
| **Subject:** | Contaminated cargo |

Bill,

I had a lengthy conversation with Graham Cullen and just want to confirm that I understand it correctly. Here is a re-cap of my understanding:

1)   RMC are not willing to screen the concrete sand and use it in Redi-mix until they are indemnified by Hanson in case of structural failure
2)   CSL/insurers position is that we will not take an open ended indemnity
3)   The suggested (and practical solution) is that the cargo is screened at an approximate cost of about US $ 150,000. CSL/insurers would be responsible for costs associated with the screening plus they would provide an indemnity for the remainder of the cargo landed value up to the extent of a total loss.
4)   The only other thing that our P&I surveyor has suggested is that the indemnity claim be time barred after a certain time has elapsed. I wonder what you feel is reasonable?

At present our Director of risk is away until Monday, so I am unable to progress this until then. I also understand that Graham Cullen is going on leave today. In order to get the necessary approvals in place, I would appreciate if you could forward me the demonstrable value of the cargo (I think this is the landed value as opposed to the value it is sold to RMC for). From this we would subtract screening costs and provided it was acceptable to our insurers, the balance would be offered as an indemnity that was time barred within a reasonable time frame.

Hopefully we can get this resolved on Monday.

Thanks

David

Bill Butler
Vice President/General Manager
Hanson Aggregates, Northern California
(925) 426-4069
bill.butler@hansonamerica.com

    -----Original Message-----
    **From:** David King [mailto:dking@CSLVAN.com]
    **Sent:** Friday, August 20, 2004 2:12 PM
    **To:** Butler, Bill (Pleasanton) NA
    **Cc:** Mike Bedford (mbedford@cslmtl.com); Ops for CSLVAN
    **Subject:** Contaminated cargo

Bill,

I had a lengthy conversation with Graham Cullen and just want to confirm that I understand it correctly.
Here is a re-cap of my understanding:

1)   RMC are not willing to screen the concrete sand and use it in Redi-mix until they are indemnified
    by Hanson in case of structural failure
2)   CSL/insurers position is that we will not take an open ended indemnity
3)   The suggested (and practical solution) is that the cargo is screened at an approximate cost of
    about US $ 150,000. CSL/insurers would be responsible for costs associated with the screening
    plus they would provide an indemnity for the remainder of the cargo landed value up to the extent
    of a total loss.
4)   The only other thing that our P&I surveyor has suggested is that the indemnity claim be time
    barred after a certain time has elapsed. I wonder what you feel is reasonable?

At present our Director of risk is away until Monday, so I am unable to progress this until then. I also
understand that Graham Cullen is going on leave today. In order to get the necessary approvals in place,
I would appreciate if you could forward me the demonstrable value of the cargo (I think this is the landed
value as opposed to the value it is sold to RMC for). From this we would subtract screening costs and
provided it was acceptable to our insurers, the balance would be offered as an indemnity that was time
barred within a reasonable time frame.

Hopefully we can get this resolved on Monday.

Thanks

David

EXHIBIT F

**Wallmann, James (San Ramon) NA**

| | |
|---|---|
| **From:** | Butler, Bill (Pleasanton) NA |
| **Sent:** | Tuesday, August 24, 2004 10:02 AM |
| **To:** | David King |
| **Cc:** | Jackson, Tom (San Francisco) NA; Wallmann, James (San Ramon) NA |
| **Subject:** | RE: Contaminated cargo |

David:

We have discussed the issues you raised in your e-mail, and offer the following response:

With regard to a time limit on the indemnity claim, we would be willing to bar the claim after a 24-month period from the date the sand is re-screened and ready for sale. Generally, if there are any construction issues associated with the contamination, they should reasonably manifest themselves within that time.

Here is the estimated total landed cost of the material at Redwood City:

| | MT | | ST |
|---|---|---|---|
| Total Tonnage: | 31,108.29 | | 34,290.67 |
| | | | |
| **Description** | **Unit Cost** | **Unit** | **Total Cost** |
| | | | |
| Material Cost | 4.85 | ST | 166,309.74 |
| | | | |
| Shipping | 5.02 | MT | 156,163.62 |
| Fuel Surcharge | 0.15 | MT | 4,666.24 |
| Canadian User Fee | | | 988.84 |
| Demurrage - Sechelt | | | 1,762.56 |
| Demurrage - wait for tide Redwood City | | | 10,271.70 |
| Secondary port costs - Redwood City (estimate) | | | 35,000.00 |
| | | | |
| Offload Costs - RMC (estimate) | 1.85 | MT | 57,550.34 |
| | | | |
| **Total Estimated Landed Cost** | | | **432,713.04** |

Please note that the offload costs for RMC are an estimate at this point; I have asked RMC to provide me a better estimate if they can. Regarding secondary port costs and demurrage, obviously you will have those exact numbers.

So, again what we are looking for is for CSL/insurer to cover our cost of re-screening the material, and provide further indemnity up to the total landed value of the material currently estimated above for a period of 24 months.

Please contact me with questions and to discuss. We would like to proceed with screening as soon as possible. Thanks,

7/21/2005

EXHIBIT G

**Wallmann, James (San Ramon) NA**

| | |
|---|---|
| **From:** | Butler, Bill (Pleasanton) NA |
| **Sent:** | Friday, September 24, 2004 3:32 PM |
| **To:** | David King |
| **Subject:** | RE: Contamination |
| **Attachments:** | Pioneer Contamination Settlement Proposal.doc |

David:

Attached is the document I gave to Graham Collins in August. It certainly details the expected magnitude of the claim, especially with regards to they lost revenue segment- this is the exact amount. We can easily and quickly produce backup for this.

As for the other costs, when Tom Jackson gets back the first part of next week he has all the cost backup for material movements at Pier 94. Mike Bishop is on vacation next week, and he has the cost backups for rescreening of sand at Oakland.

Regardless, I would expect the attached to be enough to get some sort of indication. Please let me know.

Bill Butler
Vice President/General Manager
Hanson Aggregates, Northern California
(925) 426-4069
bill.butler@hansonamerica.com

     -----Original Message-----
     **From:** David King [mailto:dking@CSLVAN.com]
     **Sent:** Friday, September 24, 2004 2:33 PM
     **To:** Butler, Bill (Pleasanton) NA
     **Subject:** Contamination

     Bill,

     I spoke to Mike Bedford and he tells me that the insurance is in no position to validate or settle the claim until they get a detailed report of:

     1. The expected magnitude of the claim (I would guess value + shipping less recovery value)
     2. All back-up documentation in regards to point 1 in order to substantiate. (sales contracts, invoices etc)
     3. Any efforts to mitigate (screening, LOI rejected etc.)

     I understand from Mike, that the Hanson organization is familiar with the requirements required in the past on a similar claim and they would expect a similar level of due diligence going forward. Frankly Bill, I have little encouragement that this claim is going to be settled in a day or two. In order to move things along, it is really going to take someone devoting a couple of days towards this thing. I'm not sure what we can do at this end as all we really have access to the bill of lading and freight charges.

     Clearly, if we get the information, we can ensure that it gets passed on. Unfortunately all this does not get us over the freight impasse on the Pioneer, and while it may seem connected, it is a separate issue and a risk that we are insured against. Our insurers are amongst the most reputable in the world and we have no reason to believe that they will not honor your claim provided it is put before them in an organized and reasonable state.

     Regards

     David

EXHIBIT H



**Hanson Building
Materials America**

**James L. Wallmann
Corporate Counsel**

2680 Bishop Drive, Suite 225
San Ramon, CA 94583-4280

Tel. 925 244 6515
Fax 925 244 1064

July 22, 2005


VIA U.S. MAIL AND E-MAIL OR FAX


Mr. David King                      Mr. Mike Bedford
Vice President, West Coast Operations   Director, Risk Management
CSL International                   CSL International
6165 Highway 17, Suite 215          Ste 600, 759 Victoria Square
Delta, B.C., Canada V4K 5B8         Montreal, Quebec, Canada H2Y 2K3

Re      Pioneer (04-22) – Material Contamination

Gentlemen:

As you know, cargo delivered by the vessel Pioneer on July 28/29, 2004, voyage
no. 04-22, was contaminated. Foam rubber used to seal the discharge gates from
the cargo hold contaminated sand as it was being discharged to Hanson's barge
delivering sand to Hanson's site in Oakland, and then subsequently when sand
was discharged from the ship to RMC/Harbor Sand and Gravel, Hanson's
customer in Redwood City. Because of the contamination, the sand was not able to
be used in concrete and was, in fact, rejected by the customer. See Attachment A.

Hanson made timely notification of its claim to CSL and we proposed a remedy on
August 31, 2004, to CSL and CSL's marine surveyor, Cullen Maritime. We were
informed at the time and understood that the remedy proposed was generally
acceptable. This letter confirms Hanson's claim and describes what we believe will
be an acceptable resolution to this claim.

The total volume of contaminated sand discharged from the vessel was 35,271.56
metric tons. The volume of contaminated sand discharged at RMC's facility in
Redwood City was 31,108.5 metric tons, or 34,290.67 short tons (ST). The original
sales price for the sand was $14.75/ST. Hanson was able to mitigate its damages
by selling 34,290.67 ST of contaminated sand for $5.00/ST. See Attachment B.

Thus, Hanson's damages are $505,787 (= $34,290.67 x $14.75) less $171,453 (= 34,290.67 x $5.00) equals $334,334. Accordingly, Hanson's claim is $334,334.

Hanson's proposal from August 31, 2004 (see Attachment C), showed additional material handling costs of $50,000 and screening costs of $4,000. Although there were certainly additional expenses, Hanson was able to substantially mitigate these additional costs and in the interest of resolving this matter we are not making a claim for these amounts.

Payment of $334,334 to Hanson will resolve this claim. Naturally, Hanson is prepared to execute the necessary settlement and release documents in connection with payment in full of this claim.

If you need additional information or have any questions, please do not hesitate to contact me or Bill Butler. Hanson values its relationship with CSL and we appreciate your assistance in promptly resolving this claim.

Sincerely,

James L. Wallmann
Corporate Counsel

/jlw
Enclosures
cc:    Capt. Graham Cullen (Cullen Maritime Services, Inc.)
       Bill Butler (Hanson Aggregates)

ATTACHMENT B (1 of 2)

**Hanson Aggregates Mid-Pacific, Inc.**

PLEASE
REMIT
TO
Dept LA 21309
Pasadena, CA 91185-1309
FOR INQUIRIES PHONE: 925 846 8600

Direct Delivery Sales

110101
SAND CONCRETE
Voyage: PIONEER 0422
Credit memo issued to Invoice# 762525.

34290.67 TN    ( 31108.50 TM ) @    14.75    505,787.38-

JOBSITE — PORT OF REDWOOD CITY

RMC - HARBOR SAND & GRAVEL
775 SEAPORT
REDWOOD CITY, CA 94063

1170419  001

INVOICE DATE 10/08/04

SHIP DATE 07/29/04

INVOICE NUMBER 12374 1 $ 12392 0

DISCOUNT COMPUTED AT A RATE OF
DISCOUNT ALLOWED ONLY FOR PAYMENT OF ACCOUNT IN FULL BY:

AUG 10    AUG 10

PAY 505,787.38-    PAY 505,787.38-    NET TOTAL/TOTAL 505,787.38-

ATTACHMENT B (2 of 2)

**Hanson Aggregates Mid-Pacific, Inc.**
Dept LA 21309
Pasadena, CA 91185-1309
FOR INQUIRIES PHONE 925 846 8800

PLEASE REMIT TO ▼▼▼

| BILLING DATE | SHIP DATE | INVOICE NUMBER |
|---|---|---|
| 10/08/04 | 07/29/04 | 12376.1 $ 123929 |

Direct Delivery Sales

110101
Voyage: PIONEER 0422
Rebill Invoice# 762525.

SAND CONCRETE

| JOBSITE | PORT OF REDWOOD CITY |
|---|---|

34290.67 TN    ( 31108.50 TM ) @    5.00    171,453.35

RMC - HARBOR SAND & GRAVEL
775 SEAPORT
REDWOOD CITY, CA 94063

1170419  001

DISCOUNT COMPUTED AT A RATE OF

DISCOUNT ALLOWED ONLY FOR PAYMENT OF ACCOUNT IN FULL BY:

| TERMS | INVOICE TOTAL |
|---|---|
| AUG 10 | 171,453.35 |

LESS DISCOUNT

PAY → 171,453.35

INVOICE TOTAL AUG 10

PAY → 171,453.35

## PIONEER SAND SHIPMENT CONTAMINATION:

### *Proposed Remedy – August 31, 2004*

- Loss of revenue:
    - Original sales price =    $14.75/ST
    - Disposal price =    $ 5.00/ST
    - Tonnage =    34,290.67 ST
    - Lost Revenue = ($14.75-5.00) x 34,290.67 = $334,334

- Material handling costs – Pier 94:
    - Estimated tonnage to move =    25,000 ST
    - Estimated cost/ST trucking, loading =    $2.00/ST
    - Total estimated material handling costs =    $50,000

- Re-screening costs – Oakland material:
    - Estimated costs =    $4,000

Total Estimated Claim =    $388,334

- OR –

$388,334/31,108.29MT =  $12.48/MT

# EXHIBIT I

## Mitchell, Rosalyn

| | |
|---|---|
| **From:** | David King [dking@CSLVAN.com] |
| **Sent:** | Friday, July 22, 2005 10:39 AM |
| **To:** | Mueller, Kelly (San Ramon) NA; mbedford@cslmtl.com |
| **Cc:** | Wallmann, James (Las Colinas) NA; Butler, Bill H. (Pleasanton) NA |
| **Subject:** | RE: CSL Letter |

Thank you,

I acknowledge receipt of your correspondence.

Kindest Regards,

David King
Vice President
CSL International
West Coast Operations

-----Original Message-----
**From:** Mueller, Kelly (San Ramon) NA [mailto:Kelly.Mueller@hanson.biz]
**Sent:** Friday, July 22, 2005 10:30 AM
**To:** David King; mbedford@cslmtl.com
**Cc:** Wallmann, James (San Ramon) NA; Butler, Bill (Pleasanton) NA
**Subject:** CSL Letter


Mr. King & Mr. Bedford,
Please find attached a letter dated July 22, 2005 from James L. Wallmann.
The original will be mailed via U.S. Mail today.

Regards,

**Kelly Mueller**
**Corporate Development & Legal Dept.**
**Hanson Building Materials America**
wk: 925-244-6503    Fx: 925-328-1808

7/22/2007

EXHIBIT J

# The **CSL** Group Inc.

August 1, 2005

Mr. James L. Wallman
Hanson Building Materials America
2680 Bishop Drive, Suite 225
San Ramon, CA 94583-4280

**WITHOUT PREJUDICE**

**RECEIVED**

AUG 0 5 2005

JIM WALLMANN

**Re:** "Pioneer" (04-22) – Material Contamination

Dear Mr. Wallman,

      I am handling the captioned file on behalf of Marbulk Shipping Inc. For the sake of clarity would you please address all future correspondence to my attention. I have received your letter of July 22nd, 2005 together with its enclosures, and I would comment as follows.

      I note that in your letter you make reference to proposing a "…. remedy on August 31, 2004 to CSL and CSL's marine surveyor …" and that you "…were informed at the time and understood that the remedy proposed was generally acceptable." As you are no doubt aware, the obligation to mitigate your losses is your alone and no agreement to any particular course of action or claim has been agreed by CSL or its surveyors.

      You state in your letter that you have mitigated your losses, however we have seen no evidence of this. Please provide us with a complete explanation of this statement with supporting documentation. In the interim, I shall be discussing your letter with Marbulk Shipping Inc.'s insurers and will revert in due course with any other comments or questions they or I may have.

                            Yours Sincerely,

                            Mike Bedford
                            Director Risk Management
                            On behalf of Marbulk Shipping Inc.

EXHIBIT K

**Mitchell, Rosalyn**

| | |
|---|---|
| **From:** | Reddick, Ernest |
| **Sent:** | Monday, July 23, 2007 12:41 PM |
| **To:** | Mitchell, Rosalyn |
| **Subject:** | FW: Pioneer Voyage 04-22 Claim / Material Contamination |



**Ernest N.  Reddick**
Nixon Peabody LLP
One Embarcadero Center
Suite 1800
San Francisco, CA  94111
• Direct 415-984-8359
• Main Phone 415-984-8200
• General Fax 415-984-8300
• Mobile 415-994-0345
• ereddick@nixonpeabody.com

**From:** Wallmann, James (Las Colinas) NA [mailto:James.Wallmann@hanson.biz]
**Sent:** Monday, June 11, 2007 7:15 AM
**To:** Reddick, Ernest
**Subject:** FW: Pioneer Voyage 04-22 Claim / Material Contamination

#4

*James L. Wallmann*
❖ Hanson North America
☎ 1.972.653.6139
🖥 james.wallmann@hanson.biz

**From:** Brummert, Jeffrey (Pleasanton) NA
**Sent:** Tuesday, December 12, 2006 6:10 PM
**To:** MBedford@cslmtl.com
**Cc:** Butler, Bill H. (Pleasanton) NA; Wallmann, James (Las Colinas) NA; Hummel, Dave (Miramar) NA
**Subject:** Pioneer Voyage 04-22 Claim / Material Contamination

Mike, The following was sent vial e-mail on 11/20/2006:

"Mike, we met over the phone last Friday, 11/17/06.  We spoke of the claim in which sand was contaminated by the foam rubber gate seal material on the ship.  You could not remember the claim I was referring to.  I would ask you to look back in your notes for a letter sent by our corporate council on July 22, 2005 regarding a claim for contaminated material supplied CSL in July 2004 on the voyage indicated in the subject line above.  You answered this letter with one of your own on August 1, 2005 and that letter was followed by another by our attorney on August 22nd.  Settlement of this claim is way over due, and I would certainly like to get it off of our

7/23/2007

books.  I spoke to Capt. David King this Friday just prior to talking to you; he indicated that the operations side of your business has already admitted fault in this claim and that he is supportive of our position that we were harmed by CSL.  Please let me know what I can do to help bring this matter to a rapid close.  Sincerely, Jeff Brummert"

To which you immediately replied:

```
"Dear Jeff,
Thanks for your e-mail, now I have the details I do recall the incident.
First I would like to point out that the vessel involved belongs to
Marbulk, not CSLI, I have therefore contacted the owners of Marbulk to find
out more details. I will only be back in Montreal next Monday, so I would
appreciate your continued patience while I look into this matter.
Best Regards,
Mike Bedford"
```

I was wondering when I might expect to be compensated for our loss?  Jeff

7/23/2007

# PROOF OF SERVICE

*Hanson Aggregates Mid-Pacific, Inc. v. Pioneer, et al.*
**United States District Court, Northern District**
**Case No.   C 07 3849 JL**

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is Nixon Peabody LLP, One Embarcadero Center, 18th Floor, San Francisco, CA 94111-3600.

On September 26, 2007, I served the following document(s):

**DECLARATION OF BILL BUTLER IN SUPPORT OF HANSON AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO MOTION TO DISMISS**

on the parties stated below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

_X_:    <u>By First-Class Mail</u> — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the U.S. Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, CA, for mailing to the office of the addressee following ordinary business practices.

___:    <u>By Personal Service</u> — I caused each such envelope to be given to a courier messenger to personally deliver to the office of the addressee.

___:    <u>By Overnight Courier</u> — I caused each such envelope to be given to an overnight mail service at San Francisco, CA, to be hand delivered to the office of the addressee on the next business day.

___:    <u>By Facsimile</u> — From facsimile number 415-984-8300, I caused each such document to be transmitted by facsimile machine, to the parties and numbers listed below, pursuant to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration.

## Addressee(s)

| | |
|---|---|
| Richard C. Wootton, Esq.<br>Marc T. Cefalu, Esq.<br>Cox Wootton Griffin Hansen & Poulos LLP<br>190 The Embarcadero<br>San Francisco, CA  94105 | Attorneys for Defendants Marbulk Canada, Inc., Marbulk Shipping, Inc. and CSL International, Inc.<br><br>Telephone:    (415) 438-4600<br>Facsimile:    (415) 438-4601 |

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 26, 2007, at San Francisco, California.

_____
Cara M. Kim

DECLARATION OF BILL BUTLER IN SUPPORT OF HANSON AGGREGATES MID-PACIFIC, INC.'S OPPOSITION TO MOTION TO DISMISS; CASE NO.  C07 3849

-1-

10735042.1