1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  Hanson Aggregates Mid Pacific, Inc,          No. C 07-3849  JL

12          Plaintiffs,                          ORDER DENYING PLAINTIFF'S
                                                 MOTION TO STRIKE DEFENDANT
13      v.                                       CSL'S 6th, 11th, and 16th AFFIRMATIVE
                                                 DEFENSES
14  Pioneer, et al.,
                                                 Docket #  27
15          Defendants.
    _____/

16

17                          **Introduction**

18
        Plaintiff Hanson's motion to strike pursuant to Rule 12(f), Federal Rules of Civil
19
    Procedure came on for hearing.  Rosalyn P. Mitchell and Ernest N. Reddick of Nixon
20
    Peabody LLP appeared on behalf of Hanson Aggregates Mid-Pacific Inc., Marc T. Cefalu of
21
    Cox, Wootton, Griffin, Hansen & Poulos, LLP appeared on behalf of Defendants Marbulk
22
    Canada Inc., Marbulk Shipping Inc., and CSL International Inc. ("CSL").
23
        IT IS HEREBY ORDERED that Plaintiff's motion to strike CSL's 6th, 11th, and 16th
24
    affirmative defenses is denied.
25
                    **Factual and Procedural Background**
26
        Hanson bases its motion on the insufficiency of defendant CSL's statute of
27
    limitations defense.  It alleges that defendant CSL cannot rely on the one year statute of
28

United States District Court
For the Northern District of California

1  limitations ("SOL") from The Hague-Visby Rules that was incorporated into the Contract of

2  Affreightment ("COA"). Consequently, Hanson's claims were timely and CSL's affirmative

3  defenses relying on the one-year SOL are insufficient as a matter of law.

4       Pursuant to a written Contract of Affreightment ("COA"), defendant CSL International

5  Inc. ("CSL") agreed to carry cargo for Hanson Aggregates Mid-Pacific, Inc. ("Hanson") for a

6  period of five years.  The COA, by its terms as stated at Clause 19, is governed by U.S.

7  Maritime law and by the laws of the state of New York.  CSL arranged to have a boatload

8  of Hanson's sand delivered from Sechelt, British Columbia, Canada, to San Francisco Bay.

9  CSL arranged the transport of the sand with Marbulk Canada Inc. and Marbulk Shipping,

10  Inc. (collectively "Marbulk").

11       CSL chartered Marbulk's vessel *M/V Pioneer* to transport Hanson's sand.  The

12  *Pioneer* picked up the sand in Sechet on or about July 23, 2004.  On July 28, 2004, the

13  boat arrived in San Francisco.  When it unloaded a small portion of the sand onto a barge,

14  it accidentally discharged the foam rubber used to seal the discharge gates into the

15  unloaded sand, contaminating it.  The next day, the same thing happened when the boat

16  unloaded the remainder of the cargo in Redwood City.  Hanson claims damages due to the

17  loss in value of the contaminated sand.  CSL denies liability and further alleges that

18  Hanson's suit against it is barred by a one-year statute of limitations.

19                                   **Legal Analysis**

20  **I.  Alleged Admission in Defendants' Answer**

21       Hanson alleges that CSL admitted in its answer "that at the time of the incident,

22  Marbulk [and not CSL] 'controlled, owned and/or managed the vessel *M/V Pioneer*.'"

23  Hanson's MPA in support of 12(f) motion, page 2, lines 17-18.  This assertion is drawn from

24  paragraphs 4, 5 and 8 of the Defendants' Answer.

25       Hanson's amended complaint in those two paragraphs only addresses MSI and

26  MCI's role in the management and/or ownership of the *M/V Pioneer*, *not* CSL's defined

27  role.  The only paragraph in the Amended Complaint which addresses CSL's purported

28  "ownership" or "management" of the vessel is paragraph 8.  That paragraph alleges that

United States District Court

For the Northern District of California

1 "CSL was not the owner of the Vessel" based upon the defined terms in the COA. CSL

2 specifically denied that allegation in its Answer. Answer, page 2, paragraph 8. Hanson's

3 interpretation of the Defendants' answer is not persuasive.

4 **II.  Standard for Striking Insufficient Defenses Pursuant to FRCP 12(f)**

5      The court may strike an insufficient defense from a pleading, either *sua sponte* or on

6 motion by a party. Fed. R. Civ. P. 12(f) (2007). Motions to strike are generally viewed with

7 disfavor and are not frequently granted. *Sapiro v. Encompass Ins.*, 221 FRD 513, 516-517

8 (N.D. Cal 2004). Whether to grant a motion to strike lies within the sound discretion of the

9 district court. 1-8 MB Practice Guide: Fed Pretrial Civ Proc in CA § 8.26 (LEXIS 2008). In

10 exercising its discretion, the court views the pleadings in the light most favorable to the

11 nonmoving party. *Id.* To show that a defense is insufficient, "the moving party must

12 demonstrate that there are no questions of fact, that any questions of law are clear and not

13 in dispute, and that under no set of circumstances could the defense succeed." *Cal. Dep't*

14 *of Toxic Substance Control v. Alco Pac.*, 217 F. Supp.2d 1028, 1032 (C.D. Cal. 2002).

15 Furthermore, "courts are very reluctant to determine disputed or substantial issues of law

16 on a motion to strike; these questions quite properly are viewed as determinable only after

17 discovery and a hearing on the merits." *Id.* at 1032-1033.

18 **III.  Contractual Ambiguity**

19      The existence of a contractual ambiguity is a question of law. *Black's Law*

20 *Dictionary* (8th ed. 2004). The actual meaning of an ambiguous provision is a question of

21 fact. *Id.* A contract or contract term is ambiguous if, "the terms of a contract could suggest

22 more than one meaning." *Wayland Inv. Fund, LLC v. Millenium Seacarriers*, *Inc.*, 111 F.

23 Supp.2d 450, 455 (S.D.N.Y. 2000). Here, Clauses 1.1(e) and 21 are susceptible of more

24 than one meaning and therefore ambiguous. Each party offers plausible, but inconsistent,

25 readings of Clause 1.1 ("owner") and Clause 21 (Clause Paramount) of the COA. It is

26 irrelevant whether either party has specifically alleged that a contractual ambiguity exists.

27 The ambiguity emerges from the provisions of the COA itself. An ambiguity does not spring

28 into existence or fade from it on the assertion (or lack thereof) of one or both of the parties.

United States District Court
For the Northern District of California

1    The actual meanings which should be given to ambiguous contract provisions are

2    questions of fact.

3        In interpreting the words of a contract, the courts seek the meaning and intention of

4    the parties.  "Such intent is to be inferred, if possible, solely from the written provisions of

5    the contract."  *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647 (2003).  If the Court

6    determines an ambiguity exists, which cannot be resolved from the written contract alone,

7    then the Court may examine extrinsic evidence in an effort to resolve any ambiguities and

8    determine the meaning and intention of the parties.  "Extrinsic evidence may be admitted to

9    prove a meaning to which the contractual language is reasonably susceptible.  Moreover,

10   even if a contract appears clear on its face, 'the court is required to engage in preliminary

11   consideration of extrinsic evidence to see whether it creates an ambiguity.'"  *Stephens v.*

12   *City of Vista*, 994 F.2d 650, 656-57 (9th Cir. 1993).

13       A motion to strike should only be granted where, "there are no questions of fact, that

14   any questions of law are clear and not in dispute, and that under no circumstances could

15   the defense succeed.*"  Cal. Dep't of Toxic Substance Control*, 217 F. Supp.2d at 1032.

16   Furthermore, "courts are very reluctant to determine disputed or substantial issues of law

17   on a motion to strike; these questions quite properly are viewed as determinable only after

18   discovery and a hearing on the merits.  *Id.* at 1032-1033.  Clauses 1.1(e) and 21 of the

19   COA are ambiguous. The meanings of these clauses are in dispute and each party offers

20   plausible interpretations.  Consequently, granting Hanson's 12(f) motion is not justified.

21       In exercising its discretion to grant or deny a party's 12(f) motion to strike, a court

22   views the pleadings in the light most favorable to the nonmoving party. 1-8 MB Practice

23   Guide: Fed Pretrial Civ Proc in CA § 8.26 (LEXIS 2008).  Defendant CSL is the non-moving

24   party and the Court views the pleadings in the light most favorable to CSL.  In so doing, the

25   Court cannot say that CSL's affirmative defenses relying on the one-year statute of

26   limitations incorporated into the COA through the Hague-Visby Rules, could under no

27   circumstances be successful.

28

**United States District Court**

For the Northern District of California

1    At oral argument Hanson cited *Royal Ins. Co. of Am. v. Orient Overseas Container*

2  *Line Ltd.*, 2008 U.S. App. LEXIS 1927 (6th Cir. 2008) in support of the proposition that the

3  intent of the parties should be ascertained from the plain language of the contract where

4  neither of the parties has argued that the contract is ambiguous or that a factual

5  controversy exists regarding the parties' intent.  The decision in this case largely repeats

6  arguments Hanson has already raised, but two points bear mention.  First, the court in

7  *Royal Insurance* was reviewing the district court's grant of partial summary judgment on the

8  parties' cross-motions for summary judgment.  *Royal Ins. Co. of Am. v. Orient Overseas*

9  *Container Line Ltd.*, 2008 U.S. App. LEXIS 1927, 31 (6th Cir. 2008).  The parties had

10 introduced extrinsic evidence in support of their interpretations.  Here, Hanson is seeking to

11 summarily strike CSL's affirmative defenses without the benefit of extrinsic evidence.

12 Second, the court in *Royal Insurance* found that the contract was ambiguous even though

13 neither party had made that claim.  *Id.* at 38.  However, the court also found that the

14 extrinsic evidence the parties offered was insufficient to resolve the ambiguity.  *Id.*  The

15 Court found that the parties had merely made legal arguments and that neither party had

16 offered sufficient evidence as to their contractual intent.  *Id.* Consequently, because there

17 was insufficient evidence to establish a genuine issue of material fact regarding the parties'

18 intent, the Court applied the rule of *contra proferentum* in construing the ambiguous terms

19 of the contract.  *Id.* at 39.  The *contra proferentum* doctrine applies where contractual

20 language is found to have more than one interpretation.  If the language is subject to more

21 than one interpretation, ambiguities are construed against the drafter of the language.

22    If this Court finds itself in a similar position to the court in *Royal Insurance* at

23 summary judgment, then it may use the same device in order to resolve the contractual

24 ambiguities.  However, that time has not yet come.

25                                          **Conclusion and Order**

26    Hanson's motion to strike CSL's 6th, 11th and 16th affirmative defenses is DENIED.

27    IT IS SO ORDERED.

28

DATED: March 21, 2008

_____
James Larson
Chief Magistrate Judge

United States District Court

For the Northern District of California